IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JOSEPH L. FOWLER, SR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO1:13-CV-515 |
| | § | |
| TIMBER ROCK RAILROAD, L.L.C. | § | |
| | § | |
| Defendant. | § | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Carolyn Russell
Texas Bar No. 24003913
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas Street, Suite 3000
Houston, Texas  77002
(713) 655-0855
(713) 655-0020 Fax

ATTORNEY-IN-CHARGE FOR
DEFENDANT

OF COUNSEL:

Aimee B. Parsons
Texas Bar No. 24036229
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas Street, Suite 3000
Houston, Texas 77002
(713) 655-0855
(713) 655-0020 Fax

# TABLE OF CONTENTS

**Description**                                                                                          **Page**

I.   INTRODUCTION ....................................................................................................1

II.  FACTUAL BACKGROUND ....................................................................................1

III. STATEMENT OF THE ISSUES ..............................................................................4

IV. SUMMARY OF THE ARGUMENT .........................................................................4

V.  ARGUMENT AND AUTHORITIES ........................................................................5

    A.  Plaintiff's race discrimination claim fails as a matter of law because he cannot establish a prima facie case ...........................................................................6

        1.  Plaintiff was not subject to an adverse employment action ..........................6

            a.  Plaintiff cannot prove constructive discharge ..........................................7

        2.  Plaintiff has no evidence that similarly situated individuals were treated more favorably ......................................................................................11

    B.  Plaintiff's age discrimination claim fails as a matter of law because he cannot establish a prima facie case of age discrimination ..............................................13

        1.  Plaintiff was not discharged ......................................................................14

        2.  Plaintiff cannot show that he was otherwise discharged because of his age ...............14

VI. CONCLUSION.........................................................................................................16

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Aryain v. Wal-Mart Stores Tex., LP*
    534 F.3d 473 (5th Cir. 2008) ........................................................................7, 8

*Barkley v. Singing River Elect. Power*
    433 Fed. Appx. 254 (5th Cir. July 19, 2011) .......................................................12

*Brown v. Bunge Corp.*
    207 F.3d 776 (5th Cir. 2000) ..............................................................................9

*Brown v. Kinney Shoe Corp.*
    237 F.3d 556 (5th Cir. 2001) .........................................................................7, 8

*Burlington N. & Santa Fe Ry. Co. v. White*
    548 U.S. 53 (2006)..............................................................................................6

*Carrera v. Comm. Coating Serv's Int'l.*
    422 Fed. Appx. 334 (5th Cir. April 14, 2011) .......................................................12

*Celotex Corp. v. Catrett*
    447 U.S. 317 (1986)............................................................................................5

*Davin v. Delta Air Lines, Inc.*
    678 F.2d 567 (5th Cir.1982) ..............................................................................6

*Dediol v. Best Chevrolet, Inc.*
    655 F.3d 435 (5th Cir. 2011) ..............................................................................8

*Fanning v. Metropolitan Transit Authority of Harris County, Tex.*
    141 Fed. Appx. 311 (5th Cir. 2005)....................................................................13

*Fordoche, Inc. v. Texaco, Inc.*
    463 F.3d 388 (5th Cir. 2006) ..............................................................................5

*Haley v. Alliance Compressor LLC*
    391 F.3d 644 (5th Cir. 2004) .........................................................................7, 8

*Hunt v. Rapides Healthcare Sys., LLC*
    277 F.3d 757 (5th Cir. 2001) ..............................................................................7

*Landgraf v. USI Film Prods.*
    968 F.2d 427 (5th Cir. 1992) ..............................................................................8

*Lee v. Kan. City S. Ry. Co.*
   574 F.3d 253 (5th Cir. 2009) ...............................................................................6, 11

*Little v. Liquid Air Corp.*
   37 F.3d 1069 (5th Cir. 1994) .......................................................................................5

*Little v. Republic Refining Co.*
   924 F.3d 93 (5th Cir. 1991) ........................................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986) .....................................................................................................5

*Mayberry v. Vought Aircraft Co.*
   55 F.3d 1086 (5th Cir. 1995) .....................................................................................11

*McCoy v. City of Shreveport*
   492 F.3d 551 (5th Cir. 2007) .......................................................................................6

*Mickey v. Texas Co-op. Extension*
   2007 WL 2220978 (S.D. Tex. Aug. 1, 2007) *aff'd,* 265 F. App'x. 177 (5th Cir. 2008)..........11

*Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*
   245 F.3d 507 (5th Cir. 2001) .......................................................................................6

*Penn. State Police v. Suders*
   542 U.S. 129 (2004) .....................................................................................................8

*Ramsey v. Henderson*
   286 F.3d 264 (5th Cir. 2002) ..................................................................................8, 13

*Rogers v. McDorman*
   521 F.3d 381 (5th Cir. 2008)........................................................................................5

*Rosales v. City of San Antonio*
   2001 WL 1168797 (W.D. Tex. Jul. 13, 2001) ...........................................................8

*Rutherford v. Harris County, Tex.*
   197 F.3d 173 (5th Cir.1999) .........................................................................................6

*Shackelford v. Deloitte & Touche, LLP*
   190 F.3d 398 (5th Cir.1999) .........................................................................................6

*Smith v. Lattimore Materials Co.*
   287 F. Supp. 2d 667 (E.D. Tex. 2003) *aff'd sub nom. Smith v. Lattimore Materials*, 77
   Fed. Appx. 729 (5th Cir. 2003).....................................................................................7

*Stults v. Conoco, Inc.*
   76 F.3d 651 (5th Cir. 1996) .........................................................................................5

*Walker v. Thompson*
  214 F.3d 615 (5th Cir. 2000) ............................................................................6

*Williams v. City of Port Arthur, Tex.*
  2012 WL 1997867 (E.D. Tex. June 1, 2012) .....................................................13

*Williams v. Gonzales*
  2005 WL 3447885 (E.D. Tex. Dec. 14, 2005) ...................................................13

### STATUTES

28 U.S.C. § 621 *et seq.* (ADEA) ...........................................................................1, 13

42 U.S.C. § 2000e *et seq* (Title VII) .......................................................................1, 5

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Timber Rock Railroad, L.L.C. ("TRRR" or "Defendant") files this Motion for Summary Judgment seeking dismissal of all claims asserted against it.  TRRR respectfully shows the following:

## I.  INTRODUCTION

This is an employment case.  Plaintiff alleges that TRRR discriminated against him because of his race and age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") *See* Dkt. No. 3, Plaintiff's Amend. Pet. at ¶ 33.

Plaintiff does not deny committing at least two serious Railroad Rules violations during his tenure with TRRR.  He admits to resigning from employment with TRRR after committing the second serious Railroad Rules violation, to avoid the possibility that the violation would be included on his railroad employment record.  Plaintiff has no evidence that he was subjected to race or age-based discrimination—or any other form of discrimination or otherwise improper or unfair treatment—during his nine years of employment with TRRR.  He has no evidence that TRRR took any adverse employment action against him.  He has no evidence that anyone at TRRR was treated better than he was, based on race, age or any other impermissible factor.

## II.  FACTUAL BACKGROUND

Plaintiff obtained employment as a Train Engineer with TRRR on June 8, 2004 and worked at TRRR's Silsbee, Texas location.  Plaintiff was fifty-years old when TRRR hired him. *See* Exhibit A, Excerpts from the Deposition of Joseph Fowler, at Exh. 1.  Plaintiff reported to the Trainmaster, Douglas Marshall, throughout his employment with TRRR until he resigned on

February 20, 2013. *Id.* at 45:10-24.  Plaintiff testified that he had a good relationship with Mr. Marshall and that he thought they were friends. *See* Exh. A, at 74:11-13; 75-77:1-10.

TRRR provided Plaintiff with a copy of its Development and Accountability Policy ("D & A Policy"). *Id.* at Exhs. 2 and 3.  TRRR's D & A Policy provides general guidelines and standard handling procedures for serious and non-serious safety violations and describes the Corrective Actions applicable to various levels of offenses. *Id.*  Plaintiff agreed to familiarize himself with the contents of the D & A Policy and he signed a statement acknowledging his receipt and review of the policy on April 23, 2010.  *Id.*

Trainmaster Marshall supervised the train crews at the Silsbee location and was responsible for enforcing TRRR's safety rules and regulations, including but not limited to the Railroad Rules and Regulations listed in the General Code of Operating Rules ("GCOR") and the Code of Federal Regulations ("CFR").  Plaintiff though of Mr. Marshall as a "good friend" and testified that he did not have any problems with Mr. Marshall. *Id.* at 74:11-13; 75-77:1-10.

Plaintiff received his first written warning for a serious Railroad Rules violation from Mr. Marshall on August 9, 2011, when he "failed to stop [a] locomotive short of derail, causing the locomotive to derail," violating the GCOR. *Id.* at Exh. 8.  Plaintiff admits that he committed this violation and that he signed a warning notice on August 9, 2011. *Id.* at 89:5-11.  Plaintiff also signed a "Waiver of Hearing" form, waiving his right to a formal hearing regarding the safety violation and accepting a fifteen-day suspension of service and one-year probationary period in conjunction with this violation. *Id.* at 58:10-25; 59:1-22; Exh. 9.

Plaintiff committed a second serious Railroad Rules violation on February 14, 2013 when he "voided [his] track warrant while [his] train was still occupying track warrant territory." *Id.* at

2

Exh. 4.  In addition to violating provisions of the GCOR, this offense violated 49 C.F.R §
240.117(e)(4), "Occupying main tracks without proper authority." *Id.*  Plaintiff acknowledged
violating this rule and does not deny responsibility for this offense.  *See* Exh. A, at 49: 7-10, 21-
25; 50:9-25; 51:1-20.  Plaintiff was aware that he would be penalized for commission of this
offense.

Pursuant to TRRR's D & A Policy, Mr. Marshall sent a letter to Plaintiff on February 15,
2013, notifying him that on February 21, 2013, TRRR would hold a formal hearing to determine
the cause of the February 14, 2013 incident. *Id.* at Exh. 4.  Mr. Marshall informed Plaintiff of his
right to be assisted by his union representative at the hearing, to explain his conduct, to call
witnesses, and to provide evidence to prove that he did not violate the GCOR provisions and 49
C.F.R. § 240.117(e)(4), "Occupying main tracks without proper authority." *Id.*

In addition to conducting a formal hearing regarding Plaintiff's responsibility for the
February 14 incident and reviewing his offense history to determine the applicable penalties
under TRRR's D & A Policy; TRRR was required to revoke Plaintiff's Engineer Certificate for a
one month period, pursuant to 49 C.F.R. § 240.  *Id.* at Exh. 6.

On February 20, 2013, the day before TRRR's formal hearing on the February 14
incident, Plaintiff met with Mr. Marshall at the Silsbee office to surrender his Engineer
Certificate and execute the revocation document required by 49 C.F.R. § 240. *See* Exhibit B,
Excerpts from Deposition of Douglas Marshall, at 40:2-25; 41-42.  When he met with Mr.
Marshall, Plaintiff expressed concern about what might occur at the hearing and asked whether
the violation would become part of his railroad employment record and whether it might result in
his discharge.  Mr. Marshall told Plaintiff that the violation might result in a suspension, or
possibly a termination, based on Plaintiff's previous violation.  In response to Plaintiff's

3

concerns about this second violation being listed on his railroad employment record, Mr. Marshall explained that he could avoid the possibility of the violation being listed on his railroad employment record if he resigned from employment prior to the formal hearing.  Seeking to preserve his "good record," Plaintiff informed Mr. Marshall that he wanted to resign from employment with TRRR and he signed a statement reflecting his intent to resign.  *See* Exh. A at 62-63; 64:1-15; 65:22-25; Exh. 5.

At no time during his nine years of employment with TRRR did Plaintiff ever complain to anyone about race or age-based discrimination or otherwise unfair or inappropriate treatment.

### III.  STATEMENT OF THE ISSUES

(1) Did TRRR take an adverse employment action against Plaintiff?
    **a.** If so, did TRRR discriminate against Plaintiff based on his race, in violation of Title VII?

(2) Did TRRR terminate Plaintiff's employment?
    **a.** If so, did TRRR discharge Plaintiff based on his age, in violation of the ADEA?

### IV.  SUMMARY OF THE ARGUMENT

Each of Plaintiff's claims fail as a matter of law because Plaintiff has no evidence to support his alleged constructive discharge and because Defendant did not take an adverse employment action against Plaintiff.  Plaintiff voluntarily resigned from employment with TRRR to avoid potential disciplinary action for his admitted safety violation.  He has no evidence that he was subjected to race or age-based discrimination during his employment at TRRR, nor can he show that similarly-situated, white co-workers received more favorable treatment under nearly identical circumstances.

## V.  ARGUMENT AND AUTHORITIES

TRRR asks the Court to grant summary judgment under rule 56 (a) of the Federal Rules of Civil Procedure.  Rule 56(a) requires the issuance of summary judgment "if there is no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986).

Once the movant meets its burden, the non-moving party must "go beyond the pleadings" and identify "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' … by 'conclusory allegations,' … by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita*, 475 U.S. at 586). Rather, the non-movant must "identify specific evidence in the record" and "articulate the precise manner" in which that evidence supports her claims.  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006).  Moreover, "[t]here must be a conflict in substantial evidence to create a jury question." *Rogers v. McDorman*, 521 F.3d 381, 391 (5th Cir. 2008).

Plaintiff alleges race discrimination and age discrimination, under Title VII the ADEA, respectively, in his Amended Complaint.  No genuine issue of material fact exists as to Plaintiff's claims, and TRRR is entitled to summary judgment on each claim.

5

A. **Plaintiff's race discrimination claim fails as a matter of law because he cannot establish a prima facie case.**

Plaintiff alleges disparate treatment based on his race.  To establish a *prima facie* case of disparate treatment discrimination under Title VII, Plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was subject to an adverse employment action; and (4) was treated less favorably because of his membership in a protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  *Lee v. Kan. City S. Ry. Co.,* 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (internal quotation marks and citations omitted).  *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir.1999); *see also Rutherford v. Harris County, Tex.,* 197 F.3d 173, 184 (5th Cir.1999); *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir.1982).

Assuming that Plaintiff is a member of a protected class and was qualified for his position at TRRR, he has no evidence that he was subject to an adverse employment action or treated less favorably than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (a plaintiff in a disparate treatment case must show that he suffered one or more "adverse employment actions").  Plaintiff has no evidence to establish elements three and four of a *prima facie* case of race-based disparate treatment.

1. Plaintiff was not subject to an adverse employment action.

The Fifth Circuit defines adverse employment actions as "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting and compensating." *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000) (citation omitted), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  There is no

6

evidence that Defendant took an adverse employment action against Plaintiff prior to his voluntary resignation on February 20, 2013.

        a.   *Plaintiff cannot prove constructive discharge.*

Plaintiff posits that he suffered an adverse employment action because he was constructively discharged.  When an employee resigns, he *may* satisfy the adverse employment element of a discrimination claim by proving constructive discharge.  *Smith v. Lattimore Materials Co.,* 287 F. Supp. 2d 667, 672 (E.D. Tex. 2003) *aff'd sub nom. Smith v. Lattimore Materials*, 77 Fed. Appx. 729 (5th Cir. 2003), *citing Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir. 2000).   To establish constructive discharge, a plaintiff must show "working conditions…*so intolerable* that a reasonable person in the employee's position would have felt *compelled to resign*." *Aryain v. Wal-Mart Stores Tex., LP,* 534 F.3d 473, 480 (5th Cir. 2008) (emphasis added) (quoting *Penn. State Police v. Suders,* 542 U.S. 129, 141 (2004)); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 (5th Cir. 2001).  "The test is objective."  *Hunt,* 277 F.3d at 772.  "The question is not whether [plaintiff] felt compelled to resign, but whether a reasonable person in her situation would have felt so compelled."  *Id.; accord Haley v. Alliance Compressor LLC*, 391 F.3d 644, 654 (5th Cir. 2004) ("The test that [plaintiff] must meet is an objective, 'reasonable employee' test: whether a reasonable person in the plaintiff's shoes would have felt compelled to resign.").

Discrimination alone is insufficient to establish constructive discharge.  *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).  To establish constructive discharge, an employee must show that his working conditions were intolerable because of *pervasive or severe discrimination*.  Courts have often awarded or affirmed summary judgment on a constructive discharge claim even where they denied summary judgment as to an underlying harassment

claim.  *See e.g. Landgraf v. USI Film Prods.*, 968 F.2d 427, 430-31 (5th Cir. 1992) (finding that "substantial harassment" involving "continuous and repeated inappropriate verbal comments and physical contact" did not rise to the level necessary to establish constructive discharge); *Rosales v. City of San Antonio*, 2001 WL 1168797, at \*15 (W.D. Tex. Jul. 13, 2001) ("just because I have concluded that plaintiffs' hostile environment sexual harassment claim can proceed to trial, it does not follow that [plaintiff's] constructive discharge should also be tried as well.").

Constructive discharge claims are essentially hostile work environment claims, only more extreme, therefore requiring proof of an aggravating factor.   *Haley*, 391 F.3d at 650 ("constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."); *Brown*, 237 F.3d at 566; *Suders*, 542 U.S. at 146; *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011) ("A constructive discharge claims requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment.")[1]

The Fifth Circuit has emphasized that in the constructive discharge context, "part of an employee's obligation to be *reasonable* is an obligation *not* to assume the worst, and *not* to jump to conclusions too fast."   *Aryain*, 534 F.3d at 481-82 *citing Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir.1987) (emphasis added) (quoting *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987)); *see Haley*, 391 F.3d at 652 (noting that a reasonable employee should pursue *less drastic options before choosing to leave her job*) (emphasis added).

To satisfy the adverse employment action requirement of his race discrimination claim with a constructive discharge, Plaintiff must prove that his resignation was reasonable under all

---

[1] To establish a hostile work environment claim, a plaintiff must prove that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a terms, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002).

of the circumstances, i.e. he must establish that his working conditions were so intolerable because of pervasive or severe discrimination.  *Brown,* 207 F.3d at 782.  Plaintiff cannot show this.  At no time during his nine years of employment with TRRR was Plaintiff subjected to race or age-based discrimination, harassment, or otherwise inappropriate treatment exhibited by his supervisors or co-workers.  The sole basis for Plaintiff's constructive discharge claim is a brief, casual conversation with his supervisor prior to the formal hearing on the second serious Railroad Rules violation which Plaintiff admittedly committed.  When Plaintiff expressed concern about what might result from his Railroad Rules violation, his supervisor, who bore no responsibility for investigating the offense or determining the appropriate disciplinary action, merely offered that based on the severity of the offense and Plaintiff's admission, "it didn't look good."  When pressed by Plaintiff, Mr. Marshall explained that Plaintiff could resign if he was worried about the effect of the violation on his railroad employment record.  *See* Exh. A at 62-63; 64:1-15; 65:22-25.

| | |
|---|---|
| **Q:** | If you didn't resign, what was going to happen? |
| **A:** | I would have left with a bad record. |
| **Q:** | Based on the violation? |
| **A:** | Yes.  By resigning, I kept a good record. |
| **Q:** | You were able to keep your good record by resigning? |
| **A:** | Yes, by resigning. |
| **Q:** | Sitting here today, you have a good record? |
| **A:** | Yes… |
| **Q:** | You would have had to go through a hearing if you didn't resign? |
| **A:** | That's correct. |
| **Q:** | You could have lost your license? |
| **A:** | Yes. |
| **Q:** | And you chose to resign? |
| **A:** | Resign. |
| **Q:** | He didn't force you, right? |
| **A:** | No. He just made it clear what would happen if I didn't resign. |
| **Q:** | By saying it didn't look good? |
| **A:** | Yes. |
| **Q:** | Did he say anything else? |
| **A:** | Just said it didn't look good. |

**Q:**     Okay.  Did you ask him what he meant by that?

**A:**     He told me that if I resigned, I keep my good record.  If I go through an investigation, you leave with a bad record.  Anyway it was I would no longer be a Timber Rock employee.

**Q:**     He said you would not be a Timber Rock employee, or that's what you interpreted?

**A:**     That's what I interpreted.

**Q:**     That's what you interpreted —

**A:**     Yes.

**Q:**     by "it doesn't look good to me."

**Q:**     That's what you interpreted it to mean.

**A:**     That's right.  That's right.

**Q:**     So we're clear, he offered you the opportunity, or the choice, to resign?

**A:**     That's correct.

**Q:**     It was your choice.

**A:**     Right

*See* Exh. A at 52:25; 53:1-24; 62:6-21; 63:1-11; 64:11-13; 65:24-25.

Plaintiff has neither alleged, nor is there one iota of evidence, that Mr. Marshall intended to badger, harass, humiliate or discriminate against Plaintiff based on his race, his age, or any other impermissible factor when they met on February 20, 2013, or at any other time during Plaintiff's employment with TRRR.  By his own admission, Plaintiff's only complaint about Mr. Marshall was the way he spoke when he was having a bad day.

**Q:**     What are your other concerns about [Mr. Marshall] not being a fair person?

**A:**     The way he talked to people…If he had a bad day, he would just talk rude…[A]s far as I'm concerned, we was good—we were good friends.

**Q:**     He was a good friend?

**A:**     Yeah, never had any problems.

**Q:**     Sitting here today, do you have any problems with him?

**A:**     No.

*See* Exh. A at 74:24; 75:1-8; 77:6-10.

Plaintiff admits that he committed a Railroad Rules violation on February 14, 2013.  He admits that he chose to resign to preserve his "good record."  He has no evidence that he experienced intolerable working conditions or that he experienced discrimination, much less the type of pervasive or severe discrimination required to establish constructive discharge.  He has

10

no evidence that TRRR would have terminated his employment after the hearing on his February 14 violation.

> 2. Plaintiff has no evidence that similarly situated individuals were treated more favorably.

Plaintiff is further unable to establish his fourth *prima facie* element—that he was treated less favorably than similarly situated non-black employees under "nearly identical" circumstances.  *See Lee,* 574 F.3d at 259; *Little v. Republic Refining Co.,* 924 F.3d 93, 97 (5th Cir. 1991), *citing Smith v. Wal–Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam*); See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995) ("To establish a prima facie case in this manner, Mayberry must show that white employees were treated differently under circumstances "nearly identical" to his.").   It is well settled that subjective beliefs and conclusory allegations are not competent summary judgment evidence. *See e.g., Mickey v. Texas Co-op. Extension,* 2007 WL 2220978 (S.D. Tex. Aug. 1, 2007) *aff'd,* 265 F. App'x. 177 (5th Cir. 2008) ("[Plaintiff] provides only conclusory statements and subjective beliefs, but no competent summary judgment evidence to suggest that the investigations were racially biased or mere pretexts.").   Plaintiff's "evidence" of disparate treatment is limited to his subjective beliefs and conclusory allegations regarding the following TRRR employees and former employees:

- John Grant:  Plaintiff believes that Mr. Grant was treated better than he was for committing a similar violation; however, he acknowledged that TRRR terminated Mr. Grant and that his engineer license was permanently revoked as a result of his safety violation.  Plaintiff also acknowledged that Mr. Grant was eventually re-hired by TRRR for a conductor position, an inferior position, based on the permanent revocation of his engineer license. *Id.* at 93:3-25; 94-95.   Plaintiff did not witness Mr. Grant's safety violation. *Id.* at 99:6-8.

- Chad Davis:  Plaintiff claims that he "heard" that Mr. Davis was intoxicated at work and that he was not disciplined.  Plaintiff has no personal knowledge nor any evidence that Mr. Davis ever was intoxicated during work hours or at any other time, nor did he witness Mr. Davis in an intoxicated state.  Plaintiff's hearsay allegation is not supported by the evidence and is not competent summary

11

judgment evidence. *Id.* at 96-97. Moreover, when asked whether he reported his concern about "hearing" that Mr. Davis had appeared for work intoxicated, Plaintiff said that he did not make a report. *Id.* at 99.  The only evidence regarding Mr. Davis is that he was disciplined for speeding on April 19, 2010, he waived his right to a formal hearing, and his engineer license was revoked for thirty days as a result of the speeding incident.

- Todd Creed:  Plaintiff claims that he heard that Mr. Creed was reported for speeding and that Mr. Creed was not disciplined. *Id.* at 98-99:1-3.  Plaintiff has no personal knowledge of any such incident, nor did he witness any such incident. Plaintiff's hearsay allegation is not supported by the evidence and is not competent summary judgment evidence.   Plaintiff never reported this allegation to anyone at TRRR. *Id.* at 100:17-19.

- George Yellot:  Plaintiff claims that Mr. Yellot violated policies by driving over the speed limit daily. *Id.* at 99. Plaintiff admits that he never witnessed Mr. Yellot violating the speed limit and he cannot explain how he "knows" that Mr. Yellot violated the speed limit "on a daily basis."  *Id.* at 99, 100.  Plaintiff's hearsay allegation is not supported by the evidence and is not competent summary judgment evidence.

- Ricky Paine:  Mr. Paine worked as a Conductor for TRRR.  He received a verbal warning for a safety violation which did not violate the GCOR on June 8, 2006. *See* Exhibit C, <u>TIBR 248</u>.  Mr. Paine received a written warning for a second safety violation on October 6, 2008—this violation did not violate the GCOR. *See* Exhibit D, <u>TIBR 250</u>.  Mr. Paine was cited for committing a GCOR Railroad Rules violation on August 27, 2009, and—like Plaintiff—waived his right to a formal hearing on this violation and accepted a 15-day suspension. *See* Exhibit E, <u>TIBR 253</u>.  He was cited for a second serious Railroad Rules violation (a second GCOR violation) on October 11, 2010 and waived his right to a hearing for the second time. *See* Exhibit F, <u>TIBR 252</u>.  Mr. Paine resigned from employment with TRR on September 9, 2012. *See* Exhibit G, <u>TIBR 247</u>.

Plaintiff has no evidence that similarly situated non-black employees under "nearly identical" circumstances received more favorable treatment.  His exceedingly vague and wholly unsubstantiated allegations are insufficient to survive a motion for summary judgment.  *See Barkley v. Singing River Elect. Power,* 433 Fed. Appx. 254, 258 (5th Cir. July 19, 2011) (holding that plaintiff must "designate <u>specific facts</u> showing that there is a genuine issue for trial" and that plaintiff's "generalized allegations" could not defeat summary judgment); *Carrera v. Comm. Coating Serv's Int'l,* 422 Fed. Appx. 334 (5th Cir. April 14, 2011) (affirming summary judgment

12

for the employer because the plaintiffs' assertions of harassment were "<u>unsubstantiated beyond their own bare assertions</u>"); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy nonmovant's burden in a motion for summary judgment.")

Because Plaintiff cannot identify a single, similarly situated non-black TRRR employee who received more favorable treatment under nearly identical circumstances, he cannot establish the fourth element of his *prima facie* case and his race discrimination claim fails as a matter of law. *See Williams v. Gonzales*, 2005 WL 3447885, at *12 (E.D. Tex. Dec. 14, 2005) ("Because Williams has failed to adduce adequate evidence to show that other, non-black employees who were similarly situated were treated more favorably, he has not established a *prima facie* case of disparate treatment, precluding an inference that the employer unlawfully discriminated against him."); *Williams v. City of Port Arthur, Tex.,* 2012 WL 1997867, at *12 (E.D. Tex. June 1, 2012).

**B.**  **Plaintiff's age discrimination claim fails as a matter of law because he cannot establish a prima facie case of age discrimination.**

To establish a prima facie case of ADEA age discrimination, a plaintiff must show: (1) he was discharged; (2) he was qualified for his position; (3) he was within the protected class [over age 40]; and (4) he was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of his age." *Fanning v. Metropolitan Transit Authority of Harris County, Tex.*, 141 Fed. Appx. 311, 313 (5th Cir. 2005), *citing West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003).  Assuming that Plaintiff was qualified for his position at TRRR and that he is a member of a protected class, Plaintiff cannot establish a prima facie case of age discrimination because he was not discharged.  Plaintiff testified that he

resigned his employment in order to avoid the possibility that his admitted Railroad Rules violation would be included on his employment record.

    1.  <u>Plaintiff was not discharged.</u>

Plaintiff has no evidence to support the first and most critical component of a *prima facie* case of age discrimination.  TRRR did not terminate Plaintiff's employment.  Plaintiff chose to resign to avoid the possibility that his February 14 safety violation would become a part of his railroad employment record.   As discussed above, Plaintiff cannot establish constructive discharge and therefor he cannot state the first element of a prima facie claim of age discrimination.

    2.  <u>Plaintiff cannot show that he was otherwise discharged because of his age.</u>

Plaintiff appears to believe that TRRR discharged him in order to avoid some obligation relating to his collection of retirement benefits from the United States Railroad Retirement Board. "The company did not want to pay me full retirement." *See* Exh. A at 105:22-25; 107; 108:1-13.  In fact, TRRR does not administer retirement benefits for its train engineers, rather, qualified railroad employees are entitled to retirement benefits pursuant to the Railroad Retirement Act, which is administered by the U.S. Railroad Retirement Board ("RRB"). *See* Exhibit H, <u>Excerpts from Railroad Retirement Board Benefits Document</u>.  Plaintiff is mistaken about both the source of his retirement benefits (TRRR does not pay employee retirement benefits) and the age for receipt of his "full retirement" (sixty-six years of age, pursuant his date of birth, as detailed by the RRB).  *Id.* at TIBR 276-277, 325.

In addition to his erroneous belief regarding TRRR's direct provision of retirement benefits to train engineers, Plaintiff incorrectly believes that he will be entitled to receive "full retirement" at age sixty-two. *See* Exh. A at 103:25; 104-105. While it is not clear what Plaintiff

understands "full retirement" to mean, what *is* clear is that he will become eligible to receive his RRB retirement annuity at age sixty-two, but that the annuity will be subject to a 25% reduction based on his date of birth (1953) and the corresponding "Full Retirement Age" set forth by the RRB—sixty-six years of age.[2] *See* Exh. H, at TIBR 277, 325.

> **Q:** So what's the basis for your age discrimination claim?
> **A:** …[A]t that point in time,…I was 59. I only had…three years left, and I would draw full retirement. At the age of 62, I would be able to retire.
> **Q:** If you had made it to 62?
> **A:** Yes.
> **Q:** So it's your understanding that you had to be employed in the railroad industry until you turned 62?
> **A:** Yes. Yes.
> **Q:** So, what's the basis of your statement that "The Company did not want to pay me full retirement"?
> **A:** It will cost them more money.

*See* Exh. A at 103:25; 104-105.

TRRR's *desire* to pay Plaintiff's "full retirement," or its lack thereof, is of no consequence. Plaintiff's retirement annuity will be administered by the RRB. He will be eligible to collect benefits at age sixty two, but because his "Full Retirement Age' as set forth by the RRB is sixty-six, he will be subject to a 25% annuity reduction. *See* Exh. H, at TIBR 277, 325. Whether he worked for until fifty-nine or sixty-two would have no effect on this 25% annuity reduction, as long as Plaintiff began collecting the benefits prior to age sixty-six. *Id.* at TIBR 276-277, 325. Plaintiff cannot establish a prima facie case of age discrimination and Defendant is entitled to judgment as a matter of law.

---

[2] The basic requirement for a qualified railroad employee to obtain a regular employee annuity from the RRB is one hundred and twenty (120) months of creditable railroad service. *Id.* at TIBR 276. At the time of Plaintiff's resignation in February, 2013, he had two hundred and ten (210) months of creditable railroad service, thereby greatly exceeding the basic requirement. Even if Plaintiff had continued to work at TRRR for an additional thirty-four (34) months, until he reached sixty-two years old, as discussed in his deposition, this additional period of employment would not change the fact that his retirement annuity will be reduced by 25% based on his "Full Retirement Age" of sixty-six years-old, if he began to collect benefits at age sixty-two. *Id.* at TIBR 277, 325.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Timber Rock Railroad is entitled to judgment in its favor as a matter of law.  Defendant Timber Rock Railroad respectfully asks that the court grant this Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, with prejudice.  TRRR also asks that it be awarded its costs and attorneys' fees.

Respectfully submitted,

/s/ Carolyn Russell
Carolyn Russell
Texas Bar No. 24003913
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas Street, Suite 3000
Houston, Texas  77002
(713) 655-0855
(713) 655-0020 Fax

ATTORNEY-IN-CHARGE FOR
DEFENDANT

OF COUNSEL:

Aimee B. Parsons
Texas Bar No. 24036229
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas Street, Suite 3000
Houston, Texas 77002
(713) 655-0855
(713) 655-0020 Fax

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Kimberly Bandoh
Law Office of Kimberly Bandoh, LLC
1745 Phoenix Blvd, Ste. 480
Atlanta, GA 30349

/s/ Carolyn Russell
Carolyn Russell

17